**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

_____

| | |
|---|---|
| NORMAN and CHERYL PORTER    } | |
| } | |
| Plaintiffs,    } | |
| } | |
| v.    } | Civil Action No. |
| } | |
| COUNTRYWIDE HOME LOANS, INC.    } | |
| } | |
| Defendant,    } | |
| } | |
| BANK OF AMERICA, N.A., successor by    } | |
| merger to BAC HOME LOANS SERVICING,    } | |
| LP    } | |
| Defendant,    } | |
| } | |
| BANK OF AMERICA, N.A.    } | |
| } | |
| Defendant,    } | |
| } | |
| THE BANK OF NEW YORK MELLON AS    } | |
| TRUSTEE FOR THE BENEFIT OF THE    } | |
| CERTIFICATEHOLDERS OF THE CWABS    } | |
| INC., ASSET-BACK CERTIFICATES,    } | |
| SERIES 2005-13    } | |
| } | |
| Defendant.    } | |

_____ }

**VERIFIED COMPLAINT**

**<u>INTRODUCTION</u>**

The history of the Porters' 2005 mortgage loan with Countrywide Home Loans, Inc.

is ludicrous.  The Porters' Complaint demonstrates that a securitized mortgage can

quickly become – and remain - a black hole of bureaucracy for borrowers *even after the*

*mortgage has been paid in full with a mortgage discharge recorded in the registry of*

*deeds*.  In sum, the Porters have suffered a mortgage debt collection nightmare that is unfortunately commonplace in this day and age.  *See Mark Higginbottom, et al. v. BAC Home Loans Servicing, L.P.*, No. 218-2011-CV-01360 (Rockingham Super Ct., January 23, 2013 Status Conference Order) (finding the defendant's handling of plaintiffs' loan modification "truly reminiscent of Franz Kafka's The Trial from which the protagonist cannot escape the unending process which has not known rules.")  Having tried to remedy the wrongs on their own to no avail, the Porters bring this action to end an extensive wrongful debt collection process alleging breach of contract, violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* and violations of New Hampshire's Unfair, Deceptive or Unreasonable Collection Practices Act, RSA 358-C.

## JURISDICTION

1.  Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337. Supplemental jurisdiction of this Court exists for the state law claims pursuant to 28 U.S.C. § 1367.   Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Porters' claims occurred in this District and the property securing the mortgage loan that is the subject of this action is situated in this District.

## PARTIES

3.  The plaintiffs, Norman and Cheryl Porter, husband and wife, are natural persons residing at 94 Saunders Avenue in White River Junction, Vermont 05001.

4.  The defendant, Countrywide Home Loans, Inc., is a corporation with a place of business at 4500 Park Granada in Calabasas, California 91302.

5.  The defendant, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BAC"), is a national banking association engaged in the business of collecting debts in this state with a place of business at 101 South Tryon Street in Charlotte, NC 28280.  BAC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

6.  The defendant, Bank of America, N.A. ("BOA"), is a national banking association engaged in the business of collection mortgage debts in this state with a place of business at 101 South Tryon Street in Charlotte, NC 28280.  BOA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

7.  The defendant, The Bank of New York Mellon as Trustee for the Benefit of the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2005-13, is a banking corporation with headquarters located at One Wall Street in New York, New York 10286.

## **FACTS**

8. Although Mr. and Mrs. Porter currently reside in Vermont, for twenty-two years, they lived at 40 Stevens Road in Lebanon, New Hampshire.

9. In 1985, Mr. and Mrs. Porter built their home on a parcel of the Porter family farm.

10. On or about September 19, 2005, the Porters refinanced their existing mortgage and obtained a mortgage loan ("Mortgage Loan")[1] secured by certain real property located at 40 Stevens Road in Lebanon, New Hampshire ("Property") from Mortgage Electronic Registration Systems, Inc. (MERS) as Nominee for Countrywide Home Loans, Inc. ("Countrywide").

11. The Porters' Mortgage Loan was serviced by Countrywide.

12. In December 2005, Mrs. Porter realized that she would require surgery within the next few months.

13. Although the Porters were current on their Mortgage Loan, they were concerned that financial problems would arise with Mrs. Porter's need for surgery.

---

1. For ease of reference, the term "Mortgage Loan" refers to the Mortgage dated September 19, 2005 and recorded at the Grafton County Registry of Deeds at Book 3196/Page 0240, the Promissory Note of even date as referenced in the Mortgage at paragraph (E) and the Loan as referenced in the Mortgage at paragraph (G).

14. The Porters contacted Countrywide and were unsuccessful in their attempts to
    obtain a loan modification.

15. Unable to meet their Mortgage Loan obligation, on February 2, 2007, the Porters
    signed a Deed-in-Lieu of Foreclosure in favor of MERS as Nominee for Countrywide
    in complete satisfaction of the Mortgage Loan ("Deed in Lieu").  Attached hereto as
    Exhibit A.

16. The Deed in Lieu was recorded in the Grafton County Registry of Deeds at
    3388/0324 on March 23, 2007.

17. In exchange for conveyance of title, the Deed in Lieu completely satisfied and
    terminated all of the Porters' obligations under the Mortgage Loan.  Exhibit A, at 2.

18. On February 2, 2007, the Porters also executed an Estoppel Affidavit which was
    recorded in the Grafton County Registry of Deeds at 3388/0326 on March 23, 2007.
    Attached hereto as Exhibit B.

19. The Estoppel Affidavit provides "[t]hat the deed[-in-lieu of foreclosure] was
    intended to be an absolute conveyance of the title to the Property . . .."  Exhibit B, at
    1.

20. The Estoppel Affidavit further provides "that the consideration for the Deed[-in-lieu
    of foreclosure] was and is full cancellation of all non-monetary obligations and full
    cancellation of all sums, costs and charges secured by the Mortgage theretofore

existing on the property executed by the undersigned as Mortgagor . . . with an

outstanding balance of $461,776.84."  Exhibit B, at 2.

### BAC HOME LOANS SERVICING, LP CONTACTS IN 2010

21. On October 29, 2010, more than **_three years after_** signing the Deed in Lieu, the

Porters received a Notice referencing their prior, but now fully satisfied, Mortgage

Loan ("Satisfied Mortgage Loan") as account number ending in 2106.[2]

22. The Notice, from BAC Home Loans Servicing, LP ("BAC"), conveyed an "Important

Message About Your Loan: We have not received your past due payments, **_so we_**

**_have referred your home loan to our Foreclosure Review Committee for review_**."

(emphasis added).

23. During 2010, Mrs. Porter faxed a complete copy of their executed and recorded Deed

in Lieu at least twice in response to BAC's collection attempts.  The Porters did not

receive a response or acknowledgment from BAC.

### BAC HOME LOANS SERVICING, LP CONTACTS IN 2011

24. On March 3, 2011, more than **_four years after_** the Porters executed the Deed in Lieu,

Mr. and Mrs. Porter each received letters from Harmon Law Offices, PC.

---

[2] All subsequent letters and notices from Bank of America, N.A. identify the Satisfied Mortgage Loan as
account number ending in 2106 with a property address of 40 Stevens Road in Lebanon, New Hampshire.

25. The letters each stated that Harmon Law Offices, PC was retained on behalf of BAC Home Loans Servicing, LP to bring a foreclosure in the name of The Bank of New York Mellon as Trustee for the Benefit of the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2005-13 ("BONY").

26.  The letters each claimed an outstanding balance of $569,464.94 with fees and costs and other charges continuing to accrue "pursuant to the loan documents."

27. Mr. Porter called Harmon Law Offices, P.C. and was told that their account did not exist in Harmon's system and to ignore the letters.

28. In June 2011, the Porters received a letter stating that "[e]ffective July 1, 2011, the servicing of home loans by our subsidiary - BAC Home Loans Servicing, LP, transfers to its parent company - BOA.  Based on our records as of June 25, 2011, the home loan account noted above is affected by this servicing transfer."  Included in this letter was a Fair Debt Collections Practices Act and State Law Notice.  The Debt Validation Notice included the following information:

> Amount of the debt as of June 25, 2011: -$682,272.02
>
> Creditor: BONY (CWABS 2005-13) G1 FIX-CCN
>
> Servicer: Bank of America, N.A.

29. In a subsequent letter, BOA advised the Porters that the June 2011 letter relating to "your ***prior*** home loan" was sent in error and to disregard it.  (emphasis added).

30. In a Notice dated July 25, 2011, BOA acknowledged and confirmed receipt of the Porters recent inquiry about their home loan.  The Porters were advised that they "can expect a complete response within twenty (20) business days."

31. The Porters received no further contact from BOA in 2011.

## BANK OF AMERICA, N.A. CONTACTS IN 2012

32. On or about August 14, 2012, the Porters received a loan modification packet from BOA.  Mr. Porter called the information number on the cover letter and spoke with a BOA customer service representative who would not listen to Mr. Porter's explanation that there was a serious error on the Satisfied Mortgage Loan account.

33. On or about August 21, 2012, the Porters received a second loan modification packet from BOA including a cover letter thanking the Porters for their interest in the modification program.  Mr. Porter again called the information number on the cover letter and spoke with a BOA customer service representative who listened to Mr. Porter's explanation that there was a serious error with their Satisfied Mortgage Loan account and agreed that something was wrong.  Mr. Porter provided Grafton County Registry of Deeds Book and Page references for the recorded Deed in Lieu. The representative informed Mr. Porter that BOA would contact them in one week and, if they didn't, to call back and request an update on reference #11406865.

34. On or about <u>August 30, 2012</u>, the Porters received a letter from BOA informing the Porters that it must receive evidence of homeowner's insurance for the Property before October 25, 2012 or BOA would purchase Lender-Placed Hazard Insurance at a cost of $3750.00 to the Porters.

35. At this point, Mr. Porter was beside himself.  Exasperated, he stapled a copy of the Deed-in Lieu to the loan modification packets as well as the force-placed insurance letter and returned it to BOA in the pre-paid Federal Express envelopes that accompanied the loan modification packets previously received from BOA.

36. In a Notice dated <u>September 5, 2012</u> addressed to the Porters, Adaline Rhodes, Account Specialist for BOA, identified herself as the Porters' "dedicated Account Specialist."

37. In a Notice dated <u>September 7, 2012</u> addressed to the Porters, Nana Boakye, Customer Relationship Manager for BOA, identified herself as the Porters' "dedicated Customer Relationship Manager[.]"

38. On <u>September 10, 2012</u>, Mr. Porter called to inquire about the status of claim #11406865 and was told that yes, indeed, his Mortgage Loan was already resolved by the Deed in Lieu.  Mr. Porter requested that BOA put this information in writing and was informed by the BOA customer service representative that "that would never happen."  Mr. Porter asked why the Porters continued to receive letters and

phone calls regarding payment of the loan.  Mr. Porter was told that "the resolution had not been put into the system yet."

39. On <u>September 10, 2012</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.

40. On <u>September 14, 2012</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.

41. On <u>September 17, 2012</u>, BOA called the Porters **twice** attempting to collect the Satisfied Mortgage Loan.

42. On <u>September 17, 2012</u>, Mr. Porter called Adaline Rhodes.  There was no answer and the voicemail option provided was not that for Ms. Rhodes.  Mr. Porter went through four phone tree options in effort to speak with someone but nobody answered.  At the last option, Mr. Porter left a message requesting that all collection efforts stop immediately.

43. On <u>September 17, 2012</u>, Mr. Porter called Nana Boakye.  Ms. Boakye did not answer and Mr. Porter was forwarded to a BOA customer service representative identified as Jessica.  Mr. Porter explained the situation and, after doing some research, Jessica agreed with Mr. Porter and stated that there was an existing Deed in Lieu on record.  Mr. Porter requested BOA to put this information in writing and was informed by Jessica that "that was not possible."

44. On <u>September 20, 2012</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.

45. On <u>September 25, 2012</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.

46. In a Notice dated <u>September 25, 2012</u>, BOA informed the Porters that it must receive evidence of homeowner's insurance for the Property before October 25, 2012 or BOA would purchase Lender-Placed Hazard Insurance at a cost of $3750.00 to the Porters.

47. On <u>September 26, 2012</u>, Mr. Porter called BOA and spoke with Ms. Boakye who informed him that the Satisfied Mortgage Loan's account number was invalid and she was working on closing it out to stop all debt collection efforts.  In response to Mr. Porter's request for a letter documenting the account's closure, Ms. Boakye said that he would have one within the next week.

48. In a letter dated <u>September 28, 2012</u>, Andrea Esparza, Customer Advocate, Office of the CEO and President for BOA, informed the Porters that Bank of America's Office of the CEO and President had received his inquiry.  Ms. Esparza further states that "[m]y goal is to provide you with a resolution to your inquiry by October 11, 2012, and if that is not possible, I will provide you with a status update by that date."

49. On <u>October 4, 2012</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-459-1690

to retrieve message code 344011.  Mr. Porter promptly called and was told that the message could not be retrieved.

50. In a letter dated <u>October 9, 2012</u>, Ms. Esparza acknowledged having a discussion regarding the Porters' "mortgage-related concern[.]"  She further stated that "although we previously stated that we would provide you with our response by October 11, 2012, additional time will be needed to complete our review and resolve your concerns.  We estimate that we will inform you of our proposed resolution by October 26, 2012."

51. On <u>October 11, 2012</u>, Mr. Porter called Ms. Esparza to obtain the promised status update.  She was not available so Mr. Porter left a voicemail.

52. In a letter dated <u>October 11, 2012</u>, Ms. Esparza acknowledged having a discussion regarding the Porters' "mortgage-related concern[.]"  She further states that "although we previously stated that we would provide you with our response by October 11, 2012, additional time will be needed to complete our review and resolve your concerns.  We estimate that we will inform you of our proposed resolution by October 26, 2012."

53. On <u>October 12, 2012</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-459-1690

to retrieve message code 963578.  Mr. Porter promptly called and was told that the

message could not be retrieved.

54. In a Notice dated <u>October 30, 2012</u>, BOA informed the Porters that it had purchased

Lender-Placed Hazard Insurance at the Porters' expense in the amount of $3570.00.

55. In a letter dated <u>November 2, 2012</u>, Lynette Capasso, on behalf of Liliana Murphy,

Senior Operations Analyst, Presidential Escalations Team at BOA, acknowledged

receipt of the Porters' correspondence expressing concern that they had completed a

Deed in Lieu with Countywide in March 2007 yet continued to receive telephone

calls and mailings regarding loan modification.  Ms. Capasso informed the Porters

that Liliana Murphy, Senior Operations Analyst, is currently working on their

account requesting documents and discontinuing telephone calls and mailings in

order to resolve this matter.

56. On <u>November 5, 2012</u>, Mr. Porter called Ms. Esparza to obtain the promised status

update.  She was not available so Mr. Porter left a message.

57. In a Home Loan Statement dated <u>November 13, 2012</u>, BOA sought to collect

$3,399.80 by December 1, 2012 despite the fact that the Home Loan had been

satisfied in full nearly seven years ago.

58. In a Notice dated <u>November 29, 2012</u>, Jameshia Hunt, Customer Relationship

Manager at BOA, informed the Porters that she was their new "Customer

[13]

Relationship Manager at Bank of American, N.A., **_your_** home loan servicer."

(emphasis added).

59. In a letter dated <u>November 30, 2012</u>, the Customer Assistance Group of the

Comptroller of the Currency informed Mr. Porter that BOA had notified their office

that the foreclosure process was active on the Porters primary residence between

January 1, 2009 and December 31, 2010.

60. In a Notice dated <u>December 12, 2012</u>, Jameshia Hunt, identified as the Porters'

Customer Relationship Manager at BOA just 13 days before, informed the Porters

that "[y]ou are receiving this notice because your mortgage is in default, and your

property will be referred to foreclosure."  Ms. Hunt represented that the holder of

the Porters' Mortgage Loan was The Bank of New York Mellon FKA The Bank of

New York as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed

Certificates, Series 2005-13.  Ms. Hunt further represented that, as of December 11,

2012, the reinstatement amount was $277,277.74 and the principal obligation under

the Mortgage was $435,114.62.

61. On <u>December 17, 2012</u>, BOA ordered a field inspection on the Porters' former

residence.  Instead, the field inspector went to 53 Stevens Avenue, the Porter's

former neighbors' home.  The field inspector left a "confidential message" on the

door knob of the neighbors' house which stated "[a]t the request of your mortgage

company, an independent field inspector called on you today.   Please call loan

servicing at (800) 669-0102."

### BANK OF AMERICA, N.A. CONTACTS IN 2013

62. In a Loan Statement dated December 31, 2012, and received by the Porters on

    January 12, 2013, BOA sought to collect $8,923.47 *by January 1, 2013* despite the fact

    that the Home Loan had been satisfied in full nearly seven years ago.

63. On January 14, 2013, BOA ordered a field inspection on the Porters' former

    residence.  Instead, the field inspector went to 53 Stevens Road, the Porters' former

    neighbors' home.  The field inspector left a "confidential message" on the door knob

    of the neighbors' house which stated "[a]t the request of your mortgage company, an

    independent field inspector called on you today.   Please call loan servicing at (800)

    669-0102."  This was the *second* "confidential message" left at the wrong property.

64. On January 28, 2013, BOA called the Porters attempting to collect the Satisfied

    Mortgage Loan.  Mr. Porter was told that there was an important message from his

    account manager and provided with the option to speak with someone.  Mr. Porter

    took that option, however, no one was available to speak with him.

65. In a Home Loan Statement dated January 30, 2013, BOA sought to collect $8,923.47

    from the Porters by February 1, 2013 despite the fact that the Home Loan had been

    satisfied in full nearly seven years ago.

[15]

66. On <u>February 1, 2013</u>, BOA ordered a field inspection on the Porters' former

residence.  Instead, the field inspector went to 53 Stevens Road, the Porters' former

neighbors' home.  The field inspector left a "confidential message" on the door knob

of the neighbors' house which stated "[a]t the request of your mortgage company, an

independent field inspector called on you today.   Please call loan servicing at (800)

669-0102."  This was the ***third*** "confidential message" left at the wrong property.

67. On <u>February 1, 2013</u>, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call to retrieve

message code 939682.  Mr. Porter promptly called and received a message from

Jameshia Hunt.  Ms. Hunt thanked the Porters for their interest in the loan

modification program, informed them that their information was being reviewed

and represented that she would be in contact with the Porters.

68. On <u>February 15, 2013</u>, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call 866-636-1096

to retrieve message code 014614.  Mr. Porter promptly called and received a message

from Jameshia Hunt requesting documents required to work on the Porters' loan

modification application.   Ms. Hunt provided her fax number of 866-270-0620.

69. On <u>February 22, 2013</u>, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call 866-636-1096

to retrieve message code 636636.  Mr. Porter promptly called and received a **<u>second</u>**

message from Jameshia Hunt requesting documents required to work on the

Porters' loan modification application.   Ms. Hunt again provided her fax number of

866-270-0620.

70. In a Home Loan Statement dated <u>February 27, 2013</u>, BOA sought to collect $8,923.47

from the Porters by March 1, 2013.

71. The Home Loan had been satisfied in full over seven years ago.

72. On <u>March 1, 2013</u>, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call 866-636-1096

to retrieve message code 854432.  Mr. Porter promptly called and received a **<u>third</u>**

message from Jameshia Hunt requesting documents required to work on the

Porters' loan modification application.   Ms. Hunt again provided her fax number of

866-270-0620.

73. On <u>March 6, 2013</u>, , BOA ordered a field inspection on the Porters' former residence.

Instead, the field inspector went to 53 Stevens Road, the Porters' former neighbors'

home.  The field inspector left a "confidential message" on the door knob of the

neighbors' house which stated "[a]t the request of your mortgage company, an

independent field inspector called on you today.   Please call loan servicing at (800)

669-0102."  This was the *fourth* "confidential message" left at the wrong property.

74. On <u>March 8, 2013</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve message code 754695.  Mr. Porter promptly called and received a **<u>fourth</u>** message from Jameshia Hunt requesting documents required to work on the Porters' loan modification application.   Ms. Hunt again provided her fax number of 866-270-0620.

75. In a Notice dated <u>March 14, 2013</u>, Guam Reid, introduced himself to the Porters as their new "new Customer Relationship Manager at Bank of America, N.A., ***<u>your</u>*** home loan servicer." (emphasis added).

76. On <u>March 15, 2013</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve message code 750443.  Mr. Porter promptly called and received a **<u>fifth</u>** message from Jameshia Hunt requesting documents required to work on the Porters' loan modification application.   Ms. Hunt again provided her fax number of 866-270-0620.

77. On <u>March 18, 2013</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call to retrieve a message.  Mr. Porter promptly called and received a message from Guam Reid requesting documents required to work on the Porters' loan modification application.

78. On <u>March 25, 2013</u>, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call to retrieve a

message.  Mr. Porter promptly called and received a **second** message from Guam

Reid requesting documents required to work on the Porters' loan modification

application.

79. In a Home Loan Statement dated <u>March 28, 2013</u>, BOA sought to collect $8,923.47

from the Porters by April 1, 2013 despite the fact that the Home Loan had been

satisfied in full over seven years ago.

80. On <u>March 29, 2013</u>, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call to retrieve a

message.  Mr. Porter promptly called and received a **third** message from Guam Reid

requesting documents required to work on the Porters' loan modification

application.

81. On <u>April 5, 2013</u>, a BOA ordered a field inspection on the Porters' former residence.

Instead, the field inspector went to 53 Stevens Road, the Porters' former neighbors'

home.  The field inspector left a "confidential message" on the door knob of the

neighbors' house which stated "[a]t the request of your mortgage company, an

independent field inspector called on you today.   Please call loan servicing at (800)

669-0102."  This was the *fifth* "confidential message" left at the wrong property.

82. On <u>April 8, 2013</u> at approximately 9:30 a.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve a message code 910938.  Mr. Porter promptly called and received a **<u>fourth</u>** message from Guam Reid requesting documents required to work on the Porters' loan modification application.

83. On <u>April 8, 2013</u> at approximately 2:38 p.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call to retrieve a message.  Mr. Porter promptly called and received a message stating that the Porters' loan modification application was too incomplete for BOA to process.  BOA requested that the Porters fax all requested documents to 866-270-0620.

84. In a letter dated <u>April 8, 2013</u>, the Porters received a Notice of Intent to Accelerate and Foreclose from BOA.  This Notice informed the Porters that their home loan is in "serious default" and, in order to cure the default, BOA must receive $304,713.82 on or before May 18, 2013.

85. On <u>April 11, 2013</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve message code 367757.

86. On April 15, 2013, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call 866-636-1096

to retrieve message code 847923.  Mr. Porter promptly called and received a message

stating that the Porters' loan modification application was too incomplete for BOA

to process.  BOA requested that the Porters resubmit all requested documents to fax

number 866-270-0620.

87. On April 18, 2013, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call 866-636-1096

to retrieve message code 811491.

88. On April 22, 2013, BOA called the Porters **twice** attempting to collect the Satisfied

Mortgage Loan.

89. On April 26, 2013, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  The automated message requested the Porters to call 866-636-1096

to retrieve message code 873200.

90. In a Home Loan Statement dated April 29, 2013, BOA sought to collect $8,923.47

from the Porters by May 1, 2013 despite the fact that the Home Loan had been

satisfied in full over seven years ago.

91. On April 29, 2013, BOA called the Porters attempting to collect the Satisfied

Mortgage Loan.  Mr. Porter was told that there was an important message from his

Customer Relations Manager and provided with the option to speak with him.  Mr. Porter selected that option and eventually spoke with Guam Reid.  Mr. Porter informed Mr. Reid that the Porters were represented by undersigned counsel and BOA was not authorized to contact them.

92. On <u>May 6, 2013</u> at approximately 11:00 a.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call to retrieve a message.

93. On <u>May 6, 2013</u> at approximately 2:30 p.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call to retrieve a message.

94. On <u>May 9, 2013</u>, BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve message code 096376.

95. On <u>May 13, 2013</u> at approximately 10:50 a.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve a message.

96. On <u>May 16, 2013</u> at approximately 11:53 a.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve message code 830855.

97. On May 24, 2013 at approximately 10:11 a.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call 866-636-1096 to retrieve message code 457179.

98. On Memorial Day, May 27, 2013, at approximately 9:30 a.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call to retrieve a message.

99. Later on Memorial Day, May 27, 2013, at approximately 2:30 p.m., BOA called the Porters attempting to collect the Satisfied Mortgage Loan.  The automated message requested the Porters to call to retrieve a message.  Mr. Porter called to retrieve the message to no avail and was forward to a customer service representative identified as Cynthia Davis.  Mr. Porter informed Ms. Davis that they were represented by counsel and BOA was not authorized to call them.  Ms. Davis indicated that she would "pass that information along."

100.    In a Home Loan Statement dated May 30, 2013, BOA sought to collect $8,923.47 from the Porters by June 1, 2013 despite the fact that the Home Loan had been satisfied in full over seven years ago.

101.    In a Notification dated June 4, 2013, QBE Insurance Corporation informed the Porters that a $2,875.56 premium for lender placed hazard insurance had been charged to the Porters' escrow account.

102.    On <u>August 14, 2014</u>, at approximately 4:54 p.m., "Sara" from BOA left a message

with a return number of 1-800-594-6170 x1384 requesting a return call regarding a

program BOA has available.  On the same date, at approximately 4:57 p.m., "Sara"

from BOA left the same message on our son's answering machine.

103.    The evening of <u>August 14, 2014</u>, Mr. Porter returned the call and was connected

to the Dignified Transition Solutions office.  The automated message advised that

the office was closed.

104.    On <u>August 15, 2014</u>, Mrs. Porter called the same number and was connected to

Michelle in the Dignified Transition Solutions office.  Michelle began to describe

BOA short sale program.  Mrs. Porter advised Michelle that we do not own a home

and the program does not apply.

105.    On <u>August 19, 2013</u>, at approximately 10:49 a.m., BOA left a message with a

return number of 1-800-594-6170 x1384 requesting a return call regarding a program

BOA has available.

106.    On that same date, at approximately 11:00 a.m. BOA called Mr. and Mrs. Porter's

son's home.  Coincidently, Mr. and Mrs. Porter were baby-sitting their

grandchildren at the time of the call and Mrs. Porter answered the call.  The caller

asked to speak with Cheryl Porter.  Mrs. Porter identified herself and asked to know

the nature of the call.  The caller began to explain the BOA short sale program.  Mrs.

Porter again advised the program does not apply.  Mr. Porter then advised the caller
they were represented by counsel and to stop all telephone calls.

107.    The letters, monthly statements, and calls were emotionally and physically
devastating to the Porters.  Each contact was a painful resurrection of the wounds
they suffered from the prior surrender of their home for 22 years.  Each contact was
exceedingly frustrating because the Porters were powerless to stop the harassment.
Mr. Porter's coherent and repeated explanation that their Mortgage Loan had been
satisfied fell on deaf ears.

108.    Mr. Porter, as a proximate result of the defendants' actions, has sustained stress-
related injuries and symptoms, in the first instance and exacerbation thereof,
including but not limited to greater vulnerability, helplessness, anxiety,
nervousness, fear, worry, loss of happiness, victimized, abused, anger, outrage,
irritation, frustration and guilt.

109.    Mrs. Porter, as a proximate result of the defendants' actions, has sustained stress-
related injuries and symptoms, in the first instance and exacerbation thereof,
including but not limited to greater vulnerability, helplessness, anxiety,
nervousness, fear, worry, loss of happiness, victimized, abused, anger, irritation,
frustration and guilt.

## FIRST CLAIM OF RELIEF

### (Breach of Contract)

110.    The Porters repeat and incorporate by reference paragraphs 1 through 104 above.

111.    Countrywide Home Loans, Inc. ("Countrywide") and the Porters agreed to a

contract to avert the foreclosure of the Porters' Property.

112.    Under the terms of the contract, the Porters executed the Deed in Lieu in favor of

MERS as Nominee for Countrywide in complete satisfaction and termination of all

obligations under the Mortgage Loan.

113.    A breach of contract occurs when there is a failure without legal excuse to

perform any promise which forms the whole or part of a contract.

114.    Countrywide breached its contract with the Porters by failing to satisfy and

terminate the Mortgage Loan.

115.    As a result of Countrywide's breach of contract, the Porters have suffered

damages which Countrywide, at the time the contract was made, had reason to

foresee as a probable result of its violation of the contract.

## SECOND CLAIM OF RELIEF

### (Fair Debt Collection Practices Act)

116.    The Porters repeat and incorporate by reference paragraphs 1 through 110 above.

[26]

117.    The Porters are natural persons who are allegedly obligated to pay the Satisfied

Mortgage Loan and are therefore "consumer[s]" as defined by 15 U.S.C. § 1692a(3).

118.    The Porters obtained the Mortgage Loan to refinance their existing mortgage on

their personal home located at 40 Stevens Road in Lebanon, New Hampshire.  The

Mortgage Loan is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

119.    The defendant BAC uses interstate commerce and/or the mail to regularly

attempt to collect, directly or indirectly, debts asserted to be owed or due another.

120.    The defendant BOA uses interstate commerce and/or the mail to regularly

attempt to collect, directly or indirectly, debts asserted to be owed or due another.

121.    The defendants, BAC and BOA, violated the Fair Debt Collection Practices Act

("FDCPA").  Their violations include, but are not limited to, the following:

(a) Communicating with the Porters after the Porters repeatedly informed the

defendants that they were represented by counsel in violation of 15 U.S.C. §

1692c(a)(2);

(b) Communicating with a third party, the residents of 53 Stevens Avenue in

Lebanon, New Hampshire, without the Porters' prior consent, in connection

with the collection of the Porters' Satisfied Mortgage Loan in violation of 15

U.S.C. § 1692c(b);

(c)  Contacting the Porters after they had requested that BAC and BOA cease
communications with them in violation of 15 U.S.C. § 1692c(c);

(d)  Causing the Porters' telephone to ring or engaging any person in telephone
conversation repeatedly or continuously with intent to annoy, abuse, or
harass any person at the called number in violation of 15 U.S.C. § 1692d(5);

(e)  Falsely representing the character, amount, or legal status of the Porters'
Satisfied Mortgage Loan in violation of 15 U.S.C. § 1692e(2)(A);

(f)  Threatening to take any action that cannot legally be taken (foreclosure of the
Property) in violation of 15 U.S.C. § 1692e(5)

(g)  Communicating with a third party, the residents of 53 Stevens Avenue in
Lebanon, New Hampshire, the Porters' credit information which is known or
which should be known to be false in violation of 15 U.S.C. § 1692e(8);

(h)  Using false representations and deceptive means to attempt to collect the
Porters' Satisfied Mortgage Loan in violation of 15 U.S.C. § 1692e(10); and

(i)  Threatening to take nonjudicial action to foreclose on the Porters' Property
when there was no present right to possession of the Property claimed as
collateral through an enforceable security interest in violation of 15 U.S.C. §
1692f(6)(A).

122.    As a result of the foregoing violations of the FDCPA, the BAC and BOA are liable

to the Porters for declaratory judgment that their conduct violated the FDCPA,

actual damages, statutory damages, costs and attorneys' fees.

## **THIRD CLAIM OF RELIEF**

### **(New Hampshire's Unfair, Deceptive or Unreasonable Collection Practices law)**

123.    The Porters repeat and incorporate by reference paragraphs 1 through 117 above.

124.    The Porters are natural persons who obtained the Mortgage Loan to refinance the

existing mortgage on their personal home located at 40 Stevens Road in Lebanon,

New Hampshire and are therefore "consumer[s]" as defined by RSA 358-C:1(I).

125.    The Porters obtained the Mortgage Loan to refinance the existing mortgage on

their personal home located at 40 Stevens Road in Lebanon, New Hampshire.  The

Mortgage Loan is therefore a "consumer credit transaction" as defined by RSA 358-

C:1(II).

126.    The Mortgage Loan was a transaction between the Porters and Countrywide to

enable the Porters to refinance the existing mortgage on their personal home located

at 40 Stevens Road in Lebanon, New Hampshire and is therefore a "consumer

transaction" as defined by RSA 358-C:1(III).

127.    The Porters are natural persons who are allegedly obligated to pay the Satisfied

Mortgage Loan and are therefore "debtors" as defined by RSA 358-C:1(VII).

128.    The Porters are individuals and therefore "person[s]" as defined by RSA 358-C:1(X).

129.    The Porters' alleged obligation to repay the Satisfied Mortgage Loan is a "debt" pursuant to RSA 358-C(VI).

130.    The defendant, BONY, claims ownership of the Satisfied Mortgage Loan.

131.    BONY attempted to enforce the alleged consumer Mortgage Loan debt by direct or indirect action and is therefore a debt collector pursuant to RSA 358-C:1(VIII)(a).

132.    The defendant, BAC, is or was an agent of BONY.

133.    BAC is or was BONY's mortgage servicer for the Satisfied Home Loan.

134.    The defendant BAC received a fee, commission or charge for enforcing or attempting to enforce the Satisfied Mortgage Loan and is therefore a "debt collector" as defined by RSA 358-C:1(VIII)(b).

135.    The defendant, BOA, is or was an agent of BONY.

136.    BOA is or was BONY's mortgage servicer for the Satisfied Home Loan.

137.    The defendant BOA received a fee, commission or charge for enforcing or attempting to enforce the Satisfied Mortgage Loan and is therefore a "debt collector" as defined by RSA 358-C:1(VIII)(b).

**Violations of RSA 358-C:2**

138.    RSA 358-C:2 provides that "[n]o debt collector shall collect or attempt to collect a

debt in an unfair, deceptive or unreasonable manner[.]"

139.    The defendants, BONY, BAC and BOA each attempted to collect the Satisfied

Mortgage Loan in an unfair, deceptive and/or unreasonable manner.

**Violations of RSA 358-C:3(VII)**

140.    RSA 358-C:3(VII) prohibits a debt collector from making "any material false

representations or implications of the character, extent or amount of the debt, or of

its status in any legal proceeding[.]"

141.    In violation of RSA 358-C:3(VII), BONY, BAC and BOA each made material false

representations and/or implications of the character, extent or amount of the

Satisfied Mortgage Loan.

**Violations of RSA 358-C:3(I)**

142.    RSA 358-C:1 prohibits a debt collector from attempting to collect the Satisfied

Mortgage Loan by communicating or attempting to communicate with the Porters

by causing their telephone to ring continuously or at unusual times or at times

known to be inconvenient with the intent to abuse, oppress or harass the Porters

and/or any person at the called number.

143.    In violation of RSA 358-C:3(I), BAC and BOA attempted to collect the Satisfied

Mortgage Loan by communicating or attempting to communicate with the Porters

[31]

by causing their telephone to ring continuously or at unusual times or at times

known to be inconvenient with the intent to abuse, oppress or harass the Porters

and/or any person at the called number.

**Ongoing Intentional, Willful or Knowing Ongoing Practice and Pattern of Conduct**

144.   The violations of RSA 358-C by the defendants BONY, BAC and BOA were part

of a persistent and ongoing practice or pattern of conduct.

145.   The violations of RSA 358-C by the defendants BONY, BAC and BOA were not

the result of a computation error in billing.

146.   The violations of RSA 358-C by the defendants BONY, BAC and BOA were

intentional, willful and/or knowing.

147.   The violations of RSA 358-C by the defendants BONY, BAC and BOA did not

result from a bona fide error or mistake notwithstanding the maintenance of

procedures reasonably adapted to avoid any such error or mistake.


**Remedies for Violations of RSA 358-C**

148.   RSA 358-C:4 provides that any debt collector who violates RSA 358-C shall be

liable to the Porters for the greater of $200 plus costs and attorneys' fees for each

violation or all damages proximately caused by the violation.

149.   Pursuant to RSA 358-C:4(I), the defendants are liable to the Porters for the greater

of $200 plus costs and reasonable attorneys' fees for each violation or all damages

proximately caused by each violation.

150.   Pursuant to RSA 358-C:4(IV), each of the defendants' violations of RSA 358-C

shall also  constitute an unfair and deceptive act or practice within the meaning of

RSA 358-A:2 entitling the Porters to compensation for two or three times their actual

or statutory damages, whichever is greater, plus costs and attorney's fees.

**WHEREFORE**, the Porters respectfully request that judgment be entered against the

defendants for the following:

A.  Declaratory judgment that Countrywide Home Loans, Inc. breached its contract

with the Porters;

B.  Declaratory judgment that the defendant, Bank of America, N.A., successor by

merger to BAC Home Loans Servicing, LP, violated the FDCPA and award

actual damages, statutory damages pursuant to 15 U.S.C. § 1692(k), and costs

and reasonable attorneys' fees pursuant to 15 U.S.C. 1692(k);

C.  Declaratory judgment that the defendant, Bank of America, N.A., violated the

FDCPA and award actual damages, statutory damages pursuant to 15 U.S.C. §

1692(k), and costs and reasonable attorneys' fees pursuant to 15 U.S.C. 1692(k);

D.  Declaratory judgment that the defendant, The Bank of New York Mellon as
    Trustee for the Benefit of the Certificateholders of the CWABS Inc., Asset-Backed
    Certificates, Series 2005-13, violated New Hampshire's Unfair, Deceptive or
    Unreasonable Collection Practices law and award the greater of $200 plus costs
    and reasonable attorneys' fees for each violation or all damages proximately
    caused by each violation;

E.  Declaratory judgment that the defendant, Bank of America, N.A., successor by
    merger to BAC Home Loans Servicing, LP violated New Hampshire's Unfair,
    Deceptive or Unreasonable Collection Practices law and award the greater of
    $200 plus costs and reasonable attorneys' fees for each violation or all damages
    proximately caused by each violation;

F.  Declaratory judgment that the defendant, Bank of America, N.A., violated New
    Hampshire's Unfair, Deceptive or Unreasonable Collection Practices law and
    award the greater of $200 plus costs and reasonable attorneys' fees for each
    violation or all damages proximately caused by each violation;

G.  Declaratory judgment that each of the defendants' violations of RSA 358-C shall
    also constitute an unfair and deceptive act or practice within the meaning of RSA
    358-A:2 entitling the Porters to compensation for two or three times their actual
    or statutory damages, whichever is greater, plus costs and attorney's fees; and

[34]

H.  Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Please take notice that the Porters demand trial by jury in this action.

Dated: September 27, 2013                    Respectfully submitted,

                                             **NORMAN and CHERYL PORTER**
                                             By and through their attorneys,

         Atwater Law                         Mary Stewart Law, PLLC

By:      /s/ Krista Atwater                  /s/ Mary Frances Stewart
         Krista Atwater, Esq.                Mary Frances Stewart, Esq.
         N.H. Bar No. 14946                  N.H. Bar No. 10067
         P.O. Box 292                        2 ½ Beacon Street, Suite 285
         Rye, NH 03870                       Concord, NH 03301
         Krista_Atwater@AtwaterLaw.net       mary@marystewartlaw.com
         603-436-2563                        603-226-7450

DATED this 26 day of August, 2013.


   /s/ Norman Porter                 
Norman Porter

STATE OF NEW HAMPSHIRE
COUNTY OF GRAFTON


On this 26 day of August, 2013, being duly sworn and on oath, personally appeared before me Norman Porter, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that the above statements are true to the best of his knowledge and belief.

/s/ Bruce M. Wing                
Notary Public
My Commission Expires: 9-14-16



DATED this 26 day of August, 2013.


/s/ Cheryl Porter                 
Cheryl Porter

STATE OF NEW HAMPSHIRE
COUNTY OF GRAFTON


On this 26 day of August 2013, being duly sworn and on oath, personally appeared before me Cheryl Porter, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that the above statements are true to the best of her knowledge and belief.

/s/ Bryce Wing                 
Notary Public
My Commission Expires: 9-14-2016